# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| EVERITE TRANSWORLD LIMITED, and EVER VICTORY TECHNOLOGY LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>MIEH, INC.,<br><br>Defendant. | Case No. 19-cv-0678<br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiffs/Counter-Defendants Everite Transworld Limited ("ETL") and Ever Victory Technology Limited ("EVTL") have moved to dismiss Defendant/Counter-Plaintiff MIEH, Inc.'s ("MIEH") counterclaims for civil conspiracy and tortious interference. For the reasons stated below, Counter-Defendants' motion to dismiss [29] is granted in part and denied in part.

I. **Background**

The following factual allegations are taken from MIEH's counterclaim and are accepted as true for the purposes of the motion to dismiss.[1] *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

---

[1] For ease of reference, MIEH's counterclaims in Dkt. 23 will hereafter be abbreviated generally as "CC").

1

ETL, EVTL, and TL[2] are affiliated companies, along with Tsuen Lee Group (Holdings) Limited; they are collectively referred to as "Tsuen Lee Group". (CC at ¶ 9). Dr. Kwong Ming Cheung is the founder and owner of the Tsuen Lee Group and inventor of the patent at issue in this case, U.S. Patent No. 9,731,212 ("the '212 Patent"). (*Id.* ¶ 10) Dr. Cheung's daughter, Emily, is the corporate secretary of ETL, and is married to Kung Jui Lee ("KJ"), who is a director of both ETL and TL. (*Id.* ¶ 11). Tsuen Lee Group (Holdings) Limited is the shareholder of TL. (*Id.* ¶ 12) The Counter-Defendants and Tsuen Lee Group all have their principal place of business on the third or fourth floor of the same building in Hong Kong. (*Id.* ¶ 13).

In 2016, Neah-Oh! International, LLC ("NOI"), a specialty toy company based in Northfield, Illinois began discussing an endeavor to work with TL on a product that TL intended to sell in the United States. (*Id.* ¶ 15). On or about April 19, 2016, TL and NOI entered into a Memorandum of Understanding. (*Id.* ¶ 16). On April 22, 2016, the two parties, TL and NOI entered into a Mutual Non-Disclosure Agreement. (*Id.* ¶ 17). TL and NOI continued to work together towards a final agreement with the goal that each company would obtain an exclusive license to certain intellectual property rights owned by the other company to use in their respective geographic territories. (*Id.* ¶ 18). In addition, TL and NOI contemplated that MIEH would be an express third-party beneficiary to the agreement. (*Id.* ¶ 19).

---

[2] Tsuen Lee Metals & Plastic Toys Company Limited ("TL") has not yet been served or appeared, though MIEH asserted its conspiracy claim against TL as well. TL has agreed to answer or otherwise respond to MIEH's counterclaims if the motion to dismiss is denied. *See* Dkt. 42 at 3.

NOI and MIEH executed the agreement and sent the agreement to TL to execute. (*Id.* ¶ 20). The agreement stated that TL's product "Rocket Wheels" and NOI's product "Zipes" encompassed similar "toy vehicles that travel through tubes or a series of tubes," referred to as the "Concept." (*Id.* ¶ 23). The agreement gave NOI exclusive license to all of TL's intellectual property rights in the Concept and gave TL exclusive license to all of NOI's intellectual property rights in the Concept. (*Id.* ¶ 24). Each party was to pay the other a royalty in certain circumstances. (*Id.*) However, TL did not execute the agreement, and Joe Tang, a Tsuen Lee Group (Holdings) Limited manager, stated that ETL would replace TL in the agreement. (*Id.* ¶ 21). Shortly after January 6, 2017, the agreement was changed so that ETL was the contracting party, and ETL, NOI, and MIEH (as an express third-party beneficiary) executed the final Exclusivity and Exploitation Agreement (the "Agreement"). (*Id.* ¶¶ 25, 29).[3] The Agreement was not otherwise changed materially. (*Id.* ¶ 29).

On August 18, 2017, Mr. Tang, whose email identified him as Manager of Sales and Marketing for ETL, emailed NOI and included the patents they owned, which included the '212 Patent. (*Id.* at ¶ 26). On March 8, 2018, Emily emailed NOI stating ETL and EVTL were "related to" TL and that ETL and EVTL were the owners of certain granted and pending patents, including the '212 Patent. (*Id.* at ¶ 27). MIEH asserts that "TL's Intellectual Property Rights in the Concept" in the Agreement, intended to and did include the intellectual property rights in '212 Patent. (*Id.* ¶ 28).

---

[3] It appears the parties have a factual dispute about the date of the controlling Agreement in this case (October 2016 vs. January 2017), but for purposes of the present motion, the Court accepts MIEH's allegation that the final Agreement was executed in January 2017. (CC ¶25).

3

NOI and MIEH did not know at the time of the Agreement that neither TL nor ETL held rights to the '212 Patent. (*Id*.) NOI and MIEH learned that EVTL was the assignee of the '212 Patent because of this lawsuit. (*Id*.)

On April 23, 2018, NOI undertook an Assignment for the Benefit of Creditors due to NOI's deteriorating financial condition. (*Id*. at ¶ 30). On July 18, 2018, ETL submitted an Affidavit of Claim to the Trustee-Assignee asserting NOI owed ETL $257,842.82 in credit that they had extended to NOI in connection with the Agreement. (*Id*. ¶ 31). The same day, TL submitted Affidavit of Claim asserting NOI owed TL an unspecified amount also arising from the Agreement. (*Id*. ¶ 32). MIEH asserts that TL's Affidavit of Claim attached the wrong Agreement. (*Id*.). Both TL and ETL submitted versions of the Agreement, the difference being TL was the counter-party on one Agreement; ETL on the other. (*Id*. at ¶ 34). The Trustee-Assignee denied ETL's claim. (*Id*. at ¶ 35). The Complaint in this case alleges that MIEH owes ETL over $250,000 in royalties, which is approximately the same amount that ETL asserted in its Affidavit of Claim against NOI. (*Id*.)

In January 2019, MIEH filed a lawsuit in the Southern District of New York against Tekno Products, Inc., Max Deluxe Limited, and Menard Inc. alleging patent infringement on the '212 Patent. (*see* Dkt. 1 at 4). Counsel for ETL and EVTL sent a letter to MIEH arguing MIEH did not have standing to assert this lawsuit under '212 Patent, requesting MIEH pay royalties, and terminating the Agreement because of MIEH's alleged breach. (*Id*. at 6; *see* Pl's Exh. D). On February 1, 2019, ETL and EVTL filed the Complaint in this case (Dkt. 1) against MIEH alleging infringement

of the '212 Patent, breach of contract, and accounts stated. MIEH filed its Answer and Affirmative Defenses, and the two Counterclaims that are the subject of the present motion to dismiss.

**II.  Standard**

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotations and citation omitted). *See also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6) motion accepts plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in plaintiff's favor. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 700 (7th Cir. 2014). A plaintiff need not plead "detailed factual allegations", but "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted). Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966 (2007). Deciding the plausibility

of the claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009)).

When a complaint alleges fraud, the heightened Rule 9(b) standard applies, requiring the pleading to "'state with particularity the circumstances constituting fraud.'" *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (quoting Fed. R. Civ. P. 9(b)). Both "common-law and statutory fraud claims must be pleaded with the detail required under Rule 9(b)'s heightened standard.*" Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 998 (7th Cir. 2018). "While the precise level of particularity required under Rule 9(b) depends upon the facts of the case, the pleading ordinarily requires describing the who, what, when, where, and how of the fraud." *Camasta,* 761 F.3d at 737 (internal citation and quotations omitted).

**III.    Analysis**

The Counter-Defendants argue that MIEH's counterclaim for civil conspiracy does not meet the heightened pleading standard under Rule 9(b) and MIEH's counterclaim for tortious inference is not adequately pled under Rule 12(b)(6).[4]

**A. Civil Conspiracy**

MIEH claims that Counter-Defendants knowing neither TL nor ETL had the rights to the '212 Patent, conspired to induce MIEH to enter into the Agreement by false pretenses. (CC at ¶ 38). Once the Agreement was reached, according to MIEH,

---

[4] The parties do not dispute that Illinois law applies to MIEH's counterclaims for conspiracy and tortious interference.

6

EVTL claimed that it owned the intellectual property, accused MIEH of patent infringement, contacting MIEH's distributors and filing suit. (*Id*. at ¶¶ 44, 50). The Counter-Defendants contend that MIEH failed to sufficiently allege a conspiracy by EVTL, ETL, and TL. The Court agrees that MIEH has not satisfied its pleading burden under Rule 9(b).

MIEH specifically alleges that Counter-Defendants "conspired to fraudulently induce MIEH to infringe the '212 Patent" and "engaged in a civil conspiracy to commit fraud." (CC at ¶¶ 1, 44). A complaint alleging conspiracy based on fraud must meet the requirements of Rule 9(b): "the pleading ordinarily requires describing the who, what, when, where, and how of the fraud." *Camasta*, 761 F.3d at 737. This applies to the claims of fraud or fraudulent inducement. *See CSX Transp., Inc. v. Five Star Enter. of Ill.*, 2018 U.S. Dist. LEXIS 59396, at *3 (N.D. Ill. Apr. 6, 2018); *Putzier v. Ace Hardware Corp.*, 50 F. Supp. 3d 964, 985 (N.D. Ill. 2014). To meet this requirement, plaintiff must allege "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016). Under Illinois law, to prove civil conspiracy, a plaintiff must establish: "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (citation omitted). The elements of

7

fraudulent inducement under Illinois law are: "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance." *Hoseman v. Weinschneider*, 322 F.3d 468 (7th Cir. 2003) (citation omitted).

MIEH argues that it is not required to allege the conspiracy with particularity, relying on *Boothe v. Sherman*, 66 F. Supp. 3d 1069 (N.D. Ill. 2014). (Dkt. 36 at 7). However, *Boothe* involved a § 1983 conspiracy claim, not a conspiracy claim based on fraud. *See Thomas v. City of Blue Island*, 178 F. Supp. 3d 646, 654 (N.D. Ill. 2016) ("Plaintiff need not allege § 1983 conspiracy claims with particularity under Rule 9(b) because they are not grounded in fraud...") (citations omitted). MIEH's claims of conspiracy to commit fraud or to fraudulently induce "must be pleaded with the detail required under Rule 9(b)'s heightened standard*." Newman*, 885 F.3d at 998.

"[F]air notice is the most basic consideration underlying Rule 9(b)." *Rocha*, 826 F.3d at 911 (internal quotations and citation omitted). In *Rocha*, the Seventh Circuit held that plaintiff's fraud claim must be dismissed because plaintiff failed "to provide the specific names, dates, times, or content of the misrepresentations or omissions that give rise to the alleged fraud" and "fail[ed] to provide fair notice to each individual Defendant concerning the nature of his or her alleged participation in the fraud." *Id*. In *Webb v. Frawley,* the complaint did not contain "a sufficiently detailed and cohesive theory of the fraud" because it was missing specifics of defendant's statements to plaintiff and identified only a conclusory motive for defendant's actions.

8

906 F.3d 569, 576 (7th Cir. 2018). Similarly, here, the Counterclaim does not sufficiently identify specific names, dates, times or the content of the misrepresentation; does not give fair notice to each defendant about its alleged role in the fraud; and does not identify a motive for Counter-Defendants' actions.

MIEH relies on three categories of statements in the Counterclaim for its conspiracy claim: (1) Mr. Tang's statement that ETL would replace TL in the agreement (CC ¶ 21); (2) Mr. Tang's August 2017 statement to NOI that the '212 Patent was included within their "Patent Nos", Emily's March 2018 statement to NOI that ETL and EVTL were the owners and licensors of certain patents including the '212 Patent, and TL's submission of an Affidavit of Claim in July 2018, attaching the version of the Agreement where it (not ETL) was the counterparty (*Id.* ¶¶ 26, 27); and (3) statements "found within the MOU, MNDA and then the [Agreement] itself" that the IP encompassed within the "Concept" in the Agreement was the same as that in the '212 Patent. (Dkt. 36 at 8).

As to Mr. Tang's statement that ETL would replace TL in the agreement, MIEH does not allege that this was a false statement, so it is not actionable for purposes of MIEH's conspiracy claim. Second, Mr. Tang's August 2017 statement, Emily's March 2018 statement, and the Affidavit of Claims were made *after* MIEH entered into the Agreement. MIEH does not explain how it was induced to enter the Agreement based on statements post-dating the Agreement. Finally, although MIEH points to statements in the MOU, MNDA and Agreement, it does not identify a specific statement that the "Concept" included '212 Patent, presumably since the '212 Patent

9

was not issued until August 15, 2017, seven months after the Agreement was executed. (*see* Dkt. 30 at 3; Dkt. 1, Exh. C).

A plaintiff alleging fraud may rely on a false statement in a document, but MIEH has not identified a specific false statement that it relied on when entering the Agreement in January 2017. As Counter-Defendants argue, MIEH also does not allege that ETL knew it did not have the right to license the '212 Patent at the time of the Agreement. In response, MIEH contends that EVTL, ETL, and TL are all affiliated (Dkt. 36 at 9), but the allegations about the entities' affiliations are not sufficient to plead that the companies reached an agreement and had a fraudulent intent to induce MIEH into entering the Agreement and infringing the patent. MIEH also asserts that the principal person negotiating on behalf of TL and ETL was Mr. Tang but MIEH "doubts he was acting alone." (Dkt. 36 at 8). In addition to failing to identify a specific false statement by Mr. Tang, MIEH's speculation that he was not acting alone does not meet MIEH's burden of alleging a conspiracy.

Although MIEH's response brief (Dkt. 36 at 10) contends that MIEH does not have particular knowledge of Counter-Defendants' subjective motivations, MIEH is required to allege Counter-Defendants' intent at least generally. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012) ("Fraudulent intent may be alleged generally."). MIEH has not done so, and in fact alleges that "[d]uring negotiations between TL and NOI, the parties' intent was for NOI to receive an exclusive license to the intellectual property described in the Agreement including the invention encompassed by the '212 Patent." (CC at ¶ 37). This allegation contradicts MIEH's

theory that Counter-Defendants' intent was to deceive MIEH and *not to* license the IP covered by the '212 Patent to MIEH.[5]

In sum, MIEH has not given Counter-Defendants fair notice of its claim of conspiracy based on fraud. MIEH has leave to replead its claim if it believes it can cure the deficiencies identified herein.

**B. Tortious Interference with Prospective Economic Advantage**

The Counter-Defendants argue that MIEH's tortious interference claim is not adequately pled under the *Twombly/Iqbal* standard. (Dkt. 30 at 1, 6–7).[6] Under Illinois law, the elements for tortious interference with prospective economic advantage are: (1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *Voyles v. Sandia Mortg. Corp.*, 196 Ill. 2d 288, 300–301 (2001).

MIEH has adequately pled this claim. MIEH alleged that "ETL and EVTL have attempted to stop the sale of MIEH's product worldwide by contacting MIEH's

---

[5] Counter-Defendants argue that MIEH's allegations make no sense because "why would and how could EVTL conspire with anyone to cause a third party such as MIEH to infringe EVTL's own '212 Patent?" (Dkt. 30 at 6). As discussed MIEH has not sufficiently alleged a general motive by Counter-Defendants, but MIEH also is not required to plead a specific intent in carrying out the alleged conspiracy.

[6] Counter-Defendants believed it was unclear whether MIEH was alleging tortious interference with contract or with prospective economic advantage. MIEH confirms it is the latter. (Dkt. 36 at 11).

distributors and threatening legal action against the distributors by falsely representing that MIEH does not have a license to use the intellectual property encompassed within the '212 patent." (CC ¶50). MIEH further alleges that its "distributors in the United States and Europe have refused to purchase MIEH products, or cancelled pending purchases of MIEH products, pending resolution of EVTL's infringement claims. MIEH had a reasonable expectancy of these purchases and EVTL's actions in attempting to stop the purchase are purposeful and without justification." (*Id.* ¶51). MIEH claims that its damages exceed $75,000 as a result of these actions. (*Id.* ¶52). These allegations are sufficient to state a tortious interference claim with prospective economic advantage. *See Foster v. Principal Life Ins. Co.*, 806 F.3d 967, 971 (7th Cir. 2015); *see also UIRC-GSA Holdings Inc. v. William Blair & Co., LLC*, 264 F. Supp. 3d 897, 908 (N.D. Ill. 2017) ("courts [] allow a tortious interference claim to stand where the plaintiff has alleged that the defendant made threats about litigation in order to interfere with the plaintiff's business relationships.").

In addition, the Court agrees with MIEH that its allegation that Counter-Defendants have contacted its distributors is sufficient to plead that Counter-Defendants knew of MIEH's business expectancies with these distributors. Moreover, Counter-Defendants appear to concede that they have contacted MIEH's distributors—they argue that they were justified in contacting MIEH's distributors because it was not false for them to state that MIEH does not have a license to the '212 Patent (Dkt. 30 at 7). Whether Counter-Defendants were justified in contacting

MIEH's distributors raises factual questions not appropriate for resolving the motion to dismiss.

## IV. Conclusion

For the stated reasons, Counter-Defendants' Motion to Dismiss [29] is granted without prejudice as to the fraudulent conspiracy count but denied as to the tortious interference count.

MIEH has leave to replead its conspiracy claim within 14 days of the date of this Order. ETL and EVTL must answer the tortious interference counterclaim within 30 days of the date of this Order. Because Tsuen Lee Metals & Plastic Toys Company Limited ("TL") is named only in the conspiracy counterclaim and the Court is dismissing that claim without prejudice, TL need not answer that claim at this time. Status hearing set for 4/14/20 remains set.

E N T E R:

Dated: February 24, 2020

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge